## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:09cv364

| | | |
|---|---|---|
| **DOROTHY M. GRUBBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on December 31, 2004. Such application was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge (hereinafter "ALJ"). After conducting a hearing on July 9, 2007, the ALJ issued a decision on August 3, 2007, which was unfavorable to

plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council on August 19, 2009, making the ALJ's decision the final decision of the Commissioner of Social Security (hereinafter "Commissioner"). Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.      If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.      If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fourth step of the sequential evaluation process, finding that she had the residual functional capacity (hereinafter "RFC") to perform past work as a dishwasher and assembler and went on to make additional findings at the fifth step as he determined that other work existed in significant numbers in the national economy, which the plaintiff could perform. Transcript (hereinafter "Tr."), at 24.

## C.      The Administrative Decision

At step one of the sequential evaluation process, the ALJ found that plaintiff had not performed any substantial gainful activity since her alleged onset date of December 31, 2004. Tr., at 19. At steps two and three, the ALJ found that plaintiff had severe impairments consisting of fibromyalgia, lower back pain, and dysthymia, Tr., at 19, but that she did not have any impairment or combination of impairments that met or equaled any impairment listed in 20 C.F.R. Appendix 1, Subpart P of Regulation No. 404. Tr., at 22.

Having found that plaintiff's impairments did not meet or equal a listing, the ALJ had to next determine whether plaintiff could perform her past relevant work or other work that existed in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(e)-(g), 416.920(e)-(g). In doing so, the ALJ had to assess plaintiff's RFC. The ALJ found that plaintiff retained the RFC to perform medium work that involved understanding, retaining, and following simple instructions; sustaining attention necessary to perform simple, repetitive tasks; the ability to relate to others, including fellow workers and supervisors; and tolerating stress and pressures associated with day-to-day work activity. Tr., at 22. Based on plaintiff's RFC and other vocational characteristics, the ALJ concluded that plaintiff could perform her past relevant work as a dishwasher and assembler, Tr. 24, as well as other work that existed in significant numbers in the national economy. Id. The ALJ determined that plaintiff was not disabled at any time relevant to the date of his decision. Id.

**D.     Discussion**

**1.     Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error, which the court has framed as issues:

I.     Whether the ALJ Properly Assessed Plaintiff's Credibility.

II.     Whether the ALJ Properly Assessed Plaintiff's Residual Functional Capacity ("RFC").

Plaintiff's assignments of error will be discussed *seriatim*.

**2.      First Assignment of Error: Whether the ALJ Properly Assessed Plaintiff's Credibility.**

**a.      Applicable Standard**

Plaintiff first contends that the ALJ erred in assessing her credibility at the administrative hearing, especially her testimony as to the impact of her ailments, including pain.  See Plaintiff's Brief, at 11-17.   In this case, the ALJ found that plaintiff's subjective complaints were not entirely credible.  Tr., at 23.  In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)).

In turn, the correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in <u>Hyatt v. Sullivan</u>, 899 F.2d 329 (4th Cir. 1990)(<u>Hyatt III</u>), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." <u>Id</u>., at 336. A two-step process for evaluating subjective complaint was developed by the Court of Appeals for the Fourth Circuit in <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. <u>See</u> 20 C.F.R § 404.1529; SSR 96-7p.[1]

Step One requires an administrative law judge (hereinafter "ALJ") to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." <u>Craig</u>, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to which they limit the claimant's ability to

---

[1]        "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); c.f. SSR 96-7p.[2] The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

### b.    The ALJ's Compliance with SSR 96-7p.

Plaintiff claims that the ALJ's credibility assessment was not conducted in accordance with Social Security Ruling 96-7p, which mirrors the requirements of

---

[2]    For all intents and purposes, Craig and SSR 96-7p are identical.  Under Social Security Ruling 96-7p, the ALJ must consider (1) the medical signs and laboratory findings; (2) the diagnoses, prognoses, and medical opinions provided by the claimant's medical sources; and (3) statements regarding the claimant's medical history, treatment and response, prior work record, efforts to work, and daily activities.  As in Hatcher, SSR also requires that the ALJ provide specific reasons for his or her credibility determinations.

<u>Craig</u> and <u>Hatcher</u>. She contends that the ALJ failed to evaluate her subjective complaints in accordance with the factors set forth in <u>Craig</u> by properly considering her (1) testimony and statements concerning her pain and mental limitations; (2) medical history; (3) laboratory findings; (4) objective medical evidence of pain; (5) activities of daily living; and (6) treatment she underwent to alleviate her pain and mental limitations. Pl's. Br., at 12. Review of the ALJ's decision and comparison of that decision to the transcript of the hearing as well as the administrative records reveals that the ALJ properly considered each <u>Craig</u> factor:

(1)     the ALJ properly considered the testimony and statements concerning plaintiff's pain and mental limitations, as the ALJ noted her statements that her pain and mental limitations prevented her from performing all types of work activity, <u>see</u> Tr., at 24;

(2)     the ALJ also considered plaintiff's medical history, as he called attention to the fact that she had been treated for lumbar degenerative disc disease; fibromyalgia; left knee pain with minor osteoarthritic changes; hypertension; resolved anemia; osteoarthritis; depression; and dysthymia, <u>see</u> Tr., at 20-22;

(3)    the ALJ considered plaintiff's laboratory findings, as he recited plaintiff's genetic testing for Huntington's chorea, which was negative, <u>see</u> Tr., at 21;

(4)    the ALJ considered the objective medical evidence of plaintiff's pain and mental limitations, as the ALJ noted that (a) plaintiff had been instructed by her physicians to avoid only heavy physical work and award positions, <u>see</u> Tr., at 20, c.f. 86, (b) Dr. Stewart J. Harley concluded that plaintiff had no permanent disability, <u>see</u> Tr., at 20, c.f. 86, Dr. Jerry Gregory found that plaintiff had good insight and judgment, <u>see</u> Tr., at 20, c.f. 146, Dr. Barbara Dubiel found that plaintiff had normal range of motion of the thoracolumbar spine, shoulder, elbow, wrist, hand, hip, knee, ankle, and foot, and some limited motion in the cervical spine, <u>see</u> Tr., at 20, c.f. 165, Family Preservation Services of North Carolina found that plaintiff's depression was in full remission, <u>see</u> Tr. 21, c.f. 219, Dr. Michael H. Young found that plaintiff had a benign neurological exam, <u>see</u> Tr., at 21, c.f. 249, that Dr. Perry Caviness and Dr. Edward Woods, two Disability Determination Services (hereinafter "DDS") physicians, opined that plaintiff could perform work related activities consistent with the requirements of medium work, <u>see</u> Tr. 24, c.f. 186-193, 194, and Dr.

Michael R. Penland's opinion that plaintiff had the ability to understand, retain, and follow simple instructions, sustain attention necessary to perform simple, repetitive tasks, the ability to relate to others, including fellow workers and supervisors, and tolerate stress and pressures associated with day-to-day work activity, <u>see</u> Tr. 20, c.f. 160;

(5)    the ALJ considered plaintiff's activities of daily living, as he called attention to plaintiff's statements that she cared for her one-year old granddaughter daily from 3:00 p.m. through 11:00 p.m.; cooked; bathed and dressed herself; cared for her personal needs; drove; watched television; and read, <u>see</u> Tr., at 20, 22, 23. The ALJ found that the evidence of record established that plaintiff did not have any limitation in performing her daily activities., <u>see</u> Tr., at 21; and

(6)    the ALJ considered the treatment plaintiff underwent to alleviate her pain and mental limitations, as he noted that plaintiff was offered surgery for her back, but declined the offer, <u>see</u> Tr, at 20, c.f. 87, was doing fairly well in regards to her fibromyalgia as a result of her medication regimen, <u>see</u> Tr., at 20, c.f. 106, had her depression symptoms alleviated as a result of her medication, which worked very well, <u>see</u> Tr. 20, c.f. 146, was doing okay as to her depression because of medication she was

taking, <u>see</u> Tr. 20, c.f. 367, 370, and was never hospitalized for a mental

impairment, <u>see</u> Tr. 22, c.f. 157.

Thus, the undersigned finds that the ALJ did indeed consider each of the factors

provided in <u>Craig</u>, and that his findings as to each factor find substantial support in the

administrative record. The factors found in <u>Craig</u> and reflected in SSR 96-7p were,

therefore, fully and properly considered by the ALJ.

Both <u>Craig</u> (as earlier explained in <u>Hatcher</u>) and SSR 96-7p require the ALJ to

explain their credibility determination in addition to considering each factor. After

considering each credibility factor, the ALJ found that plaintiff's subjective

complaints of disabling pain and mental limitations were not entirely credible. <u>See</u>

Tr., at 23-24. The ALJ reasoned that plaintiff's complaints of disabling pain were

inconsistent with plaintiff's activities of daily living, which included caring for her

one-year old granddaughter daily from 3:00 p.m. through 11:00 p.m.; cooking;

bathing and dressing herself; caring for her personal needs; driving; watching

television; and reading. Tr., at 20, 22, 23. In accordance with the teachings of the

Court of Appeals for the Fourth Circuit in <u>Gross v. Heckler</u>, 785 F.2d 1163 (4th Cir.

1986), the undersigned must find that the ALJ properly considered plaintiff's activities

of daily living and that plaintiff's assignment of error is without merit. In considering

an almost identical method of evaluating pain in <u>Mickles v. Shalala</u>, 29 F.3d 918 (4th

Cir. 1994), Honorable K. K. Hall, Circuit Judge, in announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, held:

> This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

Id., at 927. In accordance with Mickles, the ALJ properly discredited plaintiff's subjective complaints of pain. Substantial evidence supports the ALJ's determinations.

The ALJ also relied upon the fact that plaintiff's impairments improved with medication. Tr., at 20. The effectiveness of any medication an applicant is taking is a relevant factor when considering subjective symptoms such as pain. See 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i). The ALJ noted that plaintiff was never hospitalized for a mental impairment, Tr., at 22, and that plaintiff's subjective complaints of disabling pain and mental limitations were not consistent with the objective medical evidence of record. Tr., at 24. Mickles, 29 F.3d at 927. The ALJ also explained that, despite claiming to suffer from tremors, plaintiff was not observed experiencing any such tremors at the July 9, 2007, administrative hearing. Tr., at 21.[3]

---

[3] While the undersigned agrees that "sit and squirm" is not an appropriate modality for judicial or administrative decision making, Social Security Ruling 96-7p provides that the ALJ "should consider any personal observations in the overall evaluation of the credibility of the individual's statements." Review of the transcript reveals that the ALJ simply did not rely on his own observations, but actually questioned petitioner concerning her tremor, and she explained that she was not having a tremor that day because "some days are better than others." Tr., at 489-90. Such finding is, therefore, wholly consistent with 96-7p and by questioning the petitioner and affording petitioner an opportunity to explain why such observation does not match her claim, and considering other evidence of record, the ALJ avoided concerns reviewing

Plaintiff takes issue with the ALJ's consideration of her activities of daily living, discussed above. Plaintiff contends that it was unreasonable for the ALJ to rely on those activities as she testified that she had to sit down when cooking, Tr., at 497, only drove twice a week, Tr., at 488, and could not play with her granddaughter because she could not bend her knees or squat. Tr., at 498. Pl's. Br., at 12, 13-14, 16-17. Further, she argues that in her report to Dr. Dubiel, she stated that she experienced discomfort in the back and that she testified that she did not perform any household cleaning because her roommate completed that task. Tr., at 497). Pl's. Br., at 13. Plaintiff contends that not only does such evidence contradict the ALJ's credibility finding, it was error because the ALJ failed to consider such evidence in assessing the credibility of her subjective complaints as required by Arnold v. Secretary of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977). Pl's. Br., at 12, 13-14. Plaintiff alleges that the ALJ's failure to do so was particularly relevant because the evidence contradicted the ALJ's reasoning that plaintiff's subjective complaints were not entirely credible because she was able to cook, drive, and care for her granddaughter. Pl's. Br., at 12, 13-14.

First, plaintiff's claim that the ALJ did not consider the above-mentioned testimony and report, however, is without record support as the ALJ specifically

courts have with "sit and squirm" tests. See Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir.1990); Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984).

stated that he considered "the entire record." Tr., at 19. This reviewing court is not in a position to question that statement, as the statement itself establishes that all of the evidence of record was indeed considered. Rappaport v. Sullivan, 942 F.2d 1320, 1323 (8th Cir. 1991) (since ALJ stated he considered entire record in making decision, the court rejected claim that claimant's wife's testimony was not considered).

Second, to the extent plaintiff is alleging that the ALJ was required to specifically discuss all the evidence of record, she is mistaken, as an ALJ does not have to specifically refer to every piece of evidence in his or her decision. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Generally, failure by the Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995). However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). The issue of whether it is reversible error for an ALJ to fail to mention corroborative lay witness opinions has been squarely addressed by a number of circuits, as discussed by the district court in Orcutt v. Barnhart, 2005 WL 2387702, *8 -9 (C.D.Cal. 2005)[4]:

---

[4]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

As long as substantial evidence supports the ALJ's conclusion and the ALJ explains why "significant probative evidence has been rejected," an ALJ's failure to discuss lay witness testimony constitutes harmless error. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984). In *Vincent*, although the ALJ did not discuss the plaintiff's son's testimony in his hearing decision, the court held that such an omission did not require reversal because the medical evidence supported the ALJ's decision that the plaintiff was not disabled. *Id.*

The view that an ALJ need not discuss every piece of evidence, even when that evidence is from a lay witness, has found support in the Seventh and Eighth Circuits, especially when lay witness testimony does little more than corroborate a plaintiff's own testimony. In *Books v. Chater*, a Seventh Circuit decision, the court held that "[a]ll we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that [he] considered the important evidence ⋯ [and to enable] us to trace the path of the ALJ's reasoning.'" *Books v. Chater*, 91 F.3d 972, 980 (7th Cir.1996) (*quoting Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985)). Since plaintiff's brother's testimony in *Books* "did not constitute a separate 'line of evidence,'" but "served strictly to reiterate, and thereby corroborate, [plaintiff's] own testimony concerning his activities and limitations"-and the plaintiff's testimony was found by the ALJ to be "untenable" when contrasted with his daily activities and the medical evidence-the court held that the ALJ's failure to specifically discuss the plaintiff's brother's testimony was not error. *Books*, 91 F.3d at 980. Similarly, in *Young v. Apfel*, the Eighth Circuit held that "[a]lthough specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal" as long as the ALJ's "ultimate finding is supported by substantial evidence in the record." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000). In *Young*, since the same evidence the ALJ used to discount the plaintiff's testimony "also support[ed] discounting the testimony of [the plaintiff's] husband," the court held that "the ALJ's failure to give specific reasons for disregarding [the husband's] testimony [was] inconsequential." *Id.*

Any error by the ALJ in this case by not discussing Hardin's testimony was harmless for a number of reasons.

Id., at 8 -9.  While an opinion of a district court in the Ninth Circuit is not controlling in the Fourth Circuit, the court finds the reasoning of the Orcutt court to be highly persuasive. As in Orcutt, the issue is not whether the ALJ failed to mention a particular piece of evidence in his decision, but whether the ALJ's final decision denying benefits is supported by substantial evidence contained in the Administrative Record.  Here, the ALJ's failure to explicitly discuss plaintiff's testimony and report regarding her alleged limited ability to cook, drive, and care for her granddaughter was harmless, since the ALJ's reasoning that plaintiff's subjective complaints were not entirely credible because she was able to perform those activities was nonetheless supported by substantial evidence.  Review of the record reveals that plaintiff did report that she had the ability to cook and prepare breakfast and lunch, and when making that report, was silent as to any alleged need to sit down when performing that activity.  See Tr., at 157, 164. Moreover, as Plaintiff herself notes, see Pl's. Br. at 13, she testified that she drove up to two times per week, Tr., at 488, and also reported that she drove twelve miles to the consultative psychological evaluation performed by Dr. Penland.  Tr., at 156. Plaintiff twice reported that she cared for her granddaughter from 3:00 p.m. to 11:00 p.m. daily, with no mention of experiencing any physical limitations when performing that duty or requiring assistance from her roommate. Tr., at 157, 164. The ALJ's reasoning that plaintiff's subjective complaints were not

entirely credible because she was able to cook, drive, and care for her granddaughter was grounded in substantial evidence of record, as well as other unchallenged daily activities discussed by the ALJ. Tr., at 20, 22, 23. Further, the ALJ did not just rely on daily activities to discredit plaintiff's testimony, he relied on other valid considerations, including findings that her impairments improved with medication, Tr., at 20), that she was never hospitalized for a mental impairment. Tr., at 22, and that she was not observed experiencing the claimed tremors at the July 9, 2007, administrative hearing. Tr., at 21. The ALJ also reasoned that plaintiff's subjective complaints were not consistent with the objective medical evidence of record. Tr., at 24. The undersigned can find no merit to this assignment of error.

### c. Activities of Daily Living and Medium Work

Plaintiff next argues that any evidence of her ability to perform activities of daily living did not demonstrate that she could perform medium work, Pl's. Br., at 13, and that her ability to perform her daily activities was not an appropriate factor for the ALJ to rely upon without an articulation of how that performance was related to a medium RFC. Id.

While the performance of her activities of daily living did not necessarily mean that plaintiff could perform medium work, activities of daily living are relevant to the

ALJ's credibility finding and, thus, his RFC assessment. <u>Kovalcik v. Barnhart</u>, 2003 WL 22937774, at *11 (D.Del. Sep. 29, 2003)[5]; SSR 96-8p (ALJ's RFC assessment must be based on all evidence of record, including "[r]eports of daily activities"). An ALJ has a duty to consider a claimant's daily activities when assessing her credibility. SSR 96-7p. After finding that plaintiff's subjective complaints were not entirely credible - based in part on her ability to perform extensive daily activities - the ALJ expressly articulated how that finding was related to plaintiff's ability to perform medium work. In doing so, the ALJ stated that plaintiff's allegations that she could not perform any type of work activity were not entirely credible and, thus, would not preclude her from performing medium work. Tr., at 24.

> **d.    Evidence Generated After the ALJ's Decision Issued as Bearing on the ALJ's Credibility Determination**.

Plaintiff also argues that a letter dated September 25, 2007, written by plaintiff's daughter, Ms. Rebecca Burris, provides that it was plaintiff's roommate who performed the physical aspects of babysitting Ms. Burris's daughter in plaintiff's home, that plaintiff never babysat her granddaughter by herself, that plaintiff's granddaughter was asleep for a portion of the time plaintiff cared for her, that plaintiff

---

[5]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

had difficulty staying on tasks and became confused and depressed because of her pain, and that plaintiff had difficulty keeping her balance. Tr., at 476. <u>See</u> Pl's. Br., at 14, 15. Plaintiff claims that her daughter's letter establishes that her subjective complaints of disabling pain were improperly rejected by the ALJ. <u>Id.</u>, at 14See Pl's. Br. at 14, 15.

First, this evidence was generated by plaintiff only after the ALJ issued his decision as the letter is dated September 25, 2007, post-dating the ALJ's August 3, 2007, decision. While such was submitted to the Appeals Council, the ALJ never had the benefit of assessing that piece of evidence. The evidence presented by plaintiff is the type of evidence that could and should have been presented earlier. Unlike evidence that is found during a surgery occurring after an administrative decision, the evidence at issue here could have been obtained years ago, especially before the hearing at which plaintiff was represented by counsel. In <u>Melkonyan v. Sullivan</u>, 111 S.Ct. 2157, 2164 (1991), the Supreme Court discussed the characteristics of a sentence six remand for new and material evidence, stating that in amending the sixth sentence of Section 405(g), "Congress made it unmistakably clear" that it intended to limit remands for "new evidence." <u>Id.</u> The Court further held that Congress added the "good cause" requirement to try to speed up the judicial process, "so that these cases would not just go on and on." <u>Id.</u> Plaintiff's failure to obtain this evidence before the

hearing is not *good cause* for failing to develop the evidence earlier. Indeed, she appeared at the hearing with counsel and it was certainly within her knowledge the extent of the babysitting services she provided and she could have testified to such facts at the hearing. Plaintiff bears the initial burden of production of evidence and the ultimate burden of persuasion. Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1982). The court can not consider Ms. Burris's letter in determining whether the ALJ's decision is supported by substantial evidence. Smith v. Chater, 99 F.3d 635, 638, n.5 (4th Cir. 1996) (district court should only consider evidence presented to ALJ when determining whether ALJ's decision was supported by substantial evidence).

The Appeals Council did, however, consider the letter and denied review. When the Appeals Council considers such evidence, but decides to deny review, a reviewing court considers the reasons that the Appeals Council provided to determine whether substantial evidence supports the denial. Harmon v. Apfel, 103 F. Supp. 2d 869, 874 (D.S.C. 2000). The Appeals Council reviewed the evidence that plaintiff submitted with her request for review, including evidence from "Rebecca Burris." Tr., at 7. The Appeals Council determined, however, that the evidence did not warrant a change in the ALJ's decision. Id. The Appeals Council reasoned that the letter, dated September 25, 2007, did not relate to the period on or before the date of the

ALJ's August 3, 2007 decision, id., which plaintiff does herein challenge. Review of the letter reveals that it was written almost entirely in the present tense and, thereby, not retrospective to an earlier date. Put another way, such letter would have been irrelevant to the babysitting activities plaintiff performed during the period under review. The Appeals Council properly assessed plaintiff's daughter's letter.

### e.    Credibility and Fibromyalgia

Plaintiff next argues that the ALJ's reasoning that her subjective complaints were not consistent with the objective medical evidence of record was improper because she suffers from fibromyalgia, the severity of which cannot be determined by laboratory tests. Pl's. Br., at 15-16. Plaintiff argues that once an ALJ accepts the diagnosis of fibromyalgia in a claimant, the ALJ must conclude that the claimant suffers from the symptoms usually associated with fibromyalgia, unless there is substantial evidence to the contrary in the record, citing Johnson v. Astrue, 2009 WL 2151381 (1st Cir. Jul. 21, 2009). See Pl's. Br., at 15-16.[6]

The ALJ clearly found that plaintiff suffered from fibromyalgia, as he found that impairment to be severe. Tr., at 19. The ALJ also considered the fact that plaintiff was treated for that impairment. Tr., at 20. Unlike plaintiff in Johnson, there

_____

[6]    Plaintiff further contends that the ALJ failed to discuss evidence of record establishing the existence of her fibromyalgia as well as her reported symptoms associated with that impairment. Pl's. Br., at 15-16. Plaintiff fails, however, to specify the evidence of her fibromyalgia that the ALJ failed to consider. Id.

was objective medical evidence in the record establishing that plaintiff did not suffer from the symptoms usually associated with that impairment. Dr. Ellison Smith, a practitioner at Asheville Arthritis & Osteoporosis Center, diagnosed plaintiff with fibromyalgia, and found that Plaintiff was doing fairly well as a result of her medication regimen, Tr., at105-106, as noted by the ALJ. Tr., at 20. Dr. Dubiel, who also diagnosed plaintiff with fibromyalgia, found that plaintiff had normal range of motion of the thoracolumbar spine, shoulder, elbow, wrist, hand, hip, knee, ankle, and foot, Tr., at 165, as the ALJ stated. Tr., at 20. The ALJ noted that Dr. Caviness and Dr. Woods, the two DDS physicians who considered plaintiff's fibromyalgia, opined that plaintiff could perform work-related activities consistent with the requirements of medium work. Tr., at 186-193, 194. The ALJ gave great weight to those opinions. Tr., at 24. The decision in <u>Johnson</u> is, therefore, distinguishable in that there is objective medical evidence in the record establishing that plaintiff did not suffer from the symptoms usually associated with fibromyalgia.

The undersigned finds no merit in this argument.

### f.    Use of Objective Medical Evidence in Evaluating the Intensity and Persistence of Pain

Finally, plaintiff contends that once the ALJ found that she suffered from impairments that could reasonably cause her alleged pain, the ALJ was prohibited

from relying upon a lack of objective medical evidence to find that her subjective complaints were not fully credible. Pl's. Br., at 11-12, 15, 16. Such contention is not, however, consistent with current law.

Once a claimant satisfies the threshold <u>Craig</u> requirement, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of pain is *lacking*; however, that does not mean that "the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain." Blevins v. Barnhart, 2006 WL 2527434, at *7 (W.D.Va. Sep. 1, 2006).[7]

> The only analysis which *Craig* prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

<u>Johnston v. Apfel</u>, 2001 WL 34607695, at *12 (S.D.W.Va. Feb. 27, 2001) (emphasis deleted). An ALJ need not accept a claimant's subjective complaints to the extent those complaints are inconsistent with the objective medical evidence. <u>Mickles</u>, 29 F.3d at 927. In addition to the lack of corroborating objective medical evidence, the ALJ also found that plaintiff's subjective complaints were not entirely credible because plaintiff had daily activities that were inconsistent were her claim, Tr., at 20, 22, 23, that plaintiff's impairments improved with medication, Tr., at 20, that she was never hospitalized for a mental impairment, Tr., at 22, and that plaintiff was not

---

[7] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

observed experiencing any tremors. Tr., at 21. Such credibility determination is fully compliant with <u>Mickles</u>, <u>Craig</u>, and SSR 96-7p, and plaintiff's assignment of error is without merit.

### g.     Conclusion as to Credibility

The ALJ is vested with the responsibility of making credibility determinations, which requires the ALJ to sometimes make negative determinations about allegations of pain or other nonexertional impairments.   In this case, the ALJ satisfied his obligation of  specifically referring to the evidence informing his conclusion, which fully complied with all relevant case law and administrative regulations.   Finding no merit in plaintiff's contentions, the undersigned will recommend that no relief be afforded based on this assignment of error.

### 3.     Second Assignment of Error: Whether the ALJ Properly Assessed Plaintiff's Residual Functional Capacity.

The ALJ found that plaintiff has the RFC to perform medium work that involves understanding, retaining, and following simple instructions; sustaining attention necessary to perform simple, repetitive tasks; the ability to relate to others, including fellow workers and supervisors; and tolerating stress and pressures associated with day-to-day work activity. Tr., at 22. Plaintiff argues that the ALJ erred in that finding. Pl's. Br., at 16, 17-19.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

When an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ found that plaintiff had at least one severe impairment, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003). In order for an impairment to be severe, it must significantly limit a plaintiff's ability to perform basic work activities. See 20 C.F.R. § 404.1520(c). Here, plaintiff has failed to identify how any of the impairments she contends were severe resulted in work-related limitations greater than those found by theALJ during the relevant time period. Accordingly, this claim of error must fail.

After assessing the claimant's RFC, the ALJ compares that assessment with the demands of the claimant's past relevant work at step four of the sequential evaluation process to determine if the claimant can perform that work. See 20 C.F.R. §§ 404.1545(a)(5)(i), 416.945(a)(5)(i). If the claimant is unable to perform her past relevant work, given her RFC assessment, the ALJ will use that same assessment to determine whether the claimant can perform other work that exists in significant numbers in the national economy at step five. See 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii).

### a.    RFC and a Reduction in the Medium Occupational Work Base Due to Physical Limitations

Plaintiff first argues that when the ALJ assessed her physical RFC for medium work, he gave great weight to the opinions rendered by Dr. Caviness and Dr. Woods, DDS physicians, who stated that plaintiff could perform work-related activities consistent with the requirements of medium work. Tr., at 24, c.f. 186-193, 194. Pl's. Br., at 17. Plaintiff contends that the ALJ improperly failed to consider additional limitations found by those physicians, who opined that she could occasionally balance and frequently stoop, kneel, crouch, and crawl. Tr., at 188, 194. Pl's. Br., at 17. Plaintiff contends that such additional limitations would reduce the medium occupational work base, pursuant to Social Security Ruling 96-9p.  Id.

First, plaintiff has mistakenly attempted to apply SSR 96-9p to medium work, when such provision specifically applies to claimants limited to sedentary work. Belanger v. Barnhart, 2006 WL 3519307, at *4, n.7 (D.Me. Dec. 6, 2006)[8] (plaintiff's reliance upon Social Security Ruling 96-9p during judicial review was improper, as that ruling "applies only to situations involving a residual functional capacity assessment for less than a full range of sedentary work," and ALJ had assessed plaintiff as having RFC for light work.") (internal citations omitted).

Turning to the substance of the argument, to wit, that the ALJ failed to consider medical opinions providing additional limitations, review of the pleadings reveals that any error was harmless. Although the ALJ did not include limitations in his RFC assessment reflecting plaintiff's need for occasional balancing and frequent stooping, kneeling, crouching, and crawling, no error resulted, since the jobs the ALJ identified at steps four (her prior relevant work) and five (jobs existing in significant numbers in the national economy) could be performed by plaintiff despite those additional limitations. Caldwell v. Barnhart, 2008 WL 60289, at *1-*2 (11th Cir. Jan. 7, 2008)[9] (ALJ's failure to explain weight given to medical source's opinion addressing

---

[8]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

[9]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

claimant's work-related limitations was harmless, as jobs ALJ identified at step five did not require performance of tasks that exceeded those limitations). At step four of the sequential evaluation process, a claimant is able to perform her past relevant work if that work can be performed in the same manner as it is generally performed in the national economy. SSR 82-62.

The ALJ found that Plaintiff could perform her past relevant work as an assembler and dishwasher as those jobs, *inter alia*, are generally performed in the national economy. Tr., at 27. The *Dictionary of Occupational Titles* (DOT) describes how a claimant's past relevant work is performed in the national economy, see 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1), and the DOT's companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO) provides that the jobs of assembler (DOT #706.684-022, #739.687-030) and dishwasher (DOT # 599.687-030) do not require any balancing, stooping, kneeling, crouching, or crawling. See SCO, at 284, 285, 319 (4th ed. 1991).

The ALJ also found that Plaintiff could perform other work at step five of the sequential evaluation process, namely, the jobs of food service worker/preparer (DOT # 313.361-014), janitor (DOT # 382.664-010), and store clerk (DOT # 222.387-058) Tr., at 27, 501-502. The job of food service worker/preparer does not require any balancing, stooping, kneeling, crouching, or crawling, see SCO, at 84; the job of

janitor does not require any more than occasional balancing, stooping, kneeling, or crouching, and no crawling, see id. at 133, and the job of store clerk does not require any balancing or crawling, and no more than occasional stooping, kneeling, or crouching. See id. at 96.

Thus, at both the fourth and fifth steps of the sequential evaluation process, no error resulted from the ALJ not including limitations in his RFC assessment reflecting plaintiff's need for occasional balancing and frequent stooping, kneeling, crouching, and crawling.

### b. RFC and a Reduction in the Medium Occupational Work Base Due to Physical Limitations

### i. Failure to Reflect Opinions of Dr. Burgess

Plaintiff contends that the ALJ failed to consider mental impairments assessed by Dr. E.J. Burgess, a DDS psychologist, who opined that she had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. Tr., at 178. Pl's. Br., at 18. Plaintiff argues that the ALJ's RFC assessment did not include any limitations reflecting that opinion. Id.

A claimant's limitations in the areas of (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, and pace, found in 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3), are assessed when determining whether a claimant's

mental impairment is severe at step two. 20 C.F.R. §§ 404.1520a(d), 416.920a(d); Social Security Ruling 96-8p.  In contrast, when an ALJ reaches steps four and five of the sequential evaluation process, he must assess the claimant's RFC, since the 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3) factors do not indicate the work-related activities the claimant will have difficultly performing. <u>Hubbard-Davis v. Chater</u>, 1996 WL 386554, at *4 (N.D.Ill. Jul. 5, 1996),[10] <u>rev'd. on other grounds sub nom.</u>, <u>Hubbard-Davis v. Callahan</u>, 124 F.3d 204 (7th Cir. Jul. 17, 1997). An adjudicator must, however, assess the claimant's mental RFC by translating the findings that were developed through the evaluation of the 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3) factors into specific work-related limitations. <u>See</u> <u>id.</u>; Social Security Ruling 96-8p. Thus, the findings an ALJ makes as to the claimant's (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, and pace need not be included in the ALJ' RFC assessment. <u>Yoho v. Commissioner</u>, 168 F.3d 484 (4th Cir. Dec. 31, 1998).  Therefore, no error can be assigned to the ALJ in this regards as his decision fully comports with both the regulations and relevant case law.

### ii.    Ability to Follow Instructions

---

[10]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Plaintiff also challenges the ALJ's mental RFC assessment insofar as it was based on Dr. Penland's opinion that plaintiff could understand, retain, and follow simple instructions; sustain attention necessary to perform simple, repetitive tasks; relate to others, including fellow workers and supervisors; and tolerate stress and pressures associated with day-to-day work activity. Tr., at 22. Pl's. Br., at 18. Plaintiff contends that the opinion relied on by the ALJ is inconsistent with the opinions of Dr. Burgess, the DDS psychologist. Id., at 18. To the extent that plaintiff contends that Dr. Burgess's opinions that she could carry out "very short and simple instructions" and was limited to low stress work in inconsistent, Tr., at 184, the court finds the distinction to be one without meaning as the ALJ limited plaintiff to understanding, retaining, and following simple instructions and sustaining attention necessary to perform simple, repetitive tasks. Tr., at 22. In any event, after stating that plaintiff was limited to very short and simple instructions, Dr. Burgess rendered an overall, concluding opinion that Plaintiff could perform "SRRT," which is shorthand for "simple, routine, repetitive tasks." Tr., at 184. Common sense dictates that instructions that are simple would be inclusive of instructions that are short.

### iii.    Low Stress Work

To the extent a challenge is mounted based on Dr. Burgess's opinion that plaintiff was limited to low stress work, Social Security Ruling 85-15 provides that

stress is "highly individualized" and, thus, an ALJ must make specific findings as to the nature of a claimant's stress, the circumstances which trigger it, and how those factors affect her ability to work. SSR 85-15. Consequently, "stress is not a characteristic of a job, but instead reflects an individual's subjective response to a particular situation." <u>Lancellotta v. Secretary of Health & Human Servs.</u>, 806 F.2d 284, 285-287 (1st Cir. 1986). An ALJ's RFC assessment should include limitations reflecting the claimant's particular stress causing conditions, rather than a mere limitation that the claimant can perform work that does not involve the level of stress at issue. SSR 85-15. An ALJ must evaluate stress in terms of its effect on the claimant's ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and customary work situations; and deal with changes in a routine work setting. <u>Id.</u>      Dr. Burgess properly assessed those same stress-inducing abilities and, in doing so, opined that plaintiff had the ability to understand, remember, and carry out very short and simple instructions; accept instructions, respond appropriately to criticism from supervisors, and interact appropriately with others; and respond appropriately to changes in a work-setting. Tr., at 184. Clearly, the ALJ considered and found merit in those findings as he included nearly identical limitations in his mental RFC assessment. <u>See</u> Tr., at 22, c.f.

184. . Because the ALJ's RFC assessment accounted for Dr. Burgess's limitation for low stress work, there is no merit in this contention.

### iv. RFC Inconsistent With Evidence Submitted After the ALJ Issued his Decision

Plaintiff next argues that opinions rendered by Dr. Richard Gloor and Ms. Dena Watts established that she had work-related limitations in addition to those assessed by the ALJ. Pl's. Br., at 16, 18-19. Plaintiff claims that those opinions evince a "lack of substantial evidence for the ALJ's opinion on RFC." Pl's. Br., at 16, 18-19. Plaintiff has inappropriately assigned error to the ALJ when, in fact, she did not submit those opinions to the ALJ, but to the Appeals Council in the first instance. See Tr., at 7. The evidence from Dr. Gloor and Ms. Watts will not be considered in determining whether the ALJ's decision is supported by substantial evidence. Smith, 99 F.3d at 638, n.5. To the extent plaintiff is arguing that the Appeals Council did not consider that evidence, plaintiff is incorrect as the record reflects that the Appeals Council considered and reviewed such evidence. Tr., at 7. The Appeals Council determined that the evidence did not warrant a change in the ALJ's decision because it did not relate to the period on or before the ALJ's August 3, 2007, decision, id., a determination which plaintiff does not herein challenge. It appearing that the Appeals Council properly assessed such evidence, there is no merit to this assignment of error.

### v. Ability to work 8 hours a day, Five Days a Week

Plaintiff's final subcontention is that the ALJ did not consider whether she could sustain her RFC for 8 hours per day, 5 days per week, as required by Social Security Ruling 96-8p. Pl's. Br.,at 19. By definition, however, the RFC determination contemplates that an individual will sustain that capacity for 8 hours per day, 5 days per week. SSR 96-8p; <u>Pekrul v. Barnhart</u>, 2005 WL 3032460, at *2 (5th Cir. Nov. 10, 2005)[11] (ability to sustain RFC for 8 hours per day, 5 days per week "is inherent in the definition of [RFC]"). There is no merit to this argument as the Commissioner's assessment of plaintiff's RFC was in accordance with the Commissioner's regulations and rulings.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See <u>Richardson v. Perales</u>, <u>supra</u>; <u>Hays v. Sullivan</u>, <u>supra</u>. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>, the undersigned must recommend to the district court that plaintiff's

---

[11] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     the decision of the Commissioner, denying the relief sought by plaintiff, be **AFFIRMED**;

(2)     the plaintiff's Motion for Summary Judgment (#14) be **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment (#16) be **GRANTED**; and

(4)     this action be **DISMISSED**.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections**

**must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: November 18, 2010

Dennis L. Howell
United States Magistrate Judge